All right, this is our last case for the day, and it is case number 4150764, Wohlers v. Keith. For the appellant, we have Rochelle Funderburg, for the applant, William Casley. Ms. Funderburg, you may proceed. May it please the court and counsel, my name is Rochelle Funderburg. I represent the appellant, Diane Wohlers, in this matter. We are here before you on the issuance of a preliminary injunction by the circuit court of Vermilion County. Essentially, what we have here is a property line dispute that has now morphed into this injunction, among other things. Has a certified surveyor ever surveyed the lots? I believe so, although that's not in the record, and that was not done at the time. No evidence before the trial court, and I don't believe there was any access to that at that time. Well, counsel, the reason I was interested in that question as well is, this is a pretty simple lawsuit. It was filed in August of 2014, quiet title. I mean, we're not talking about hundreds of acres here. Right. July of 2015, the Keats filed a petition for preliminary injunction because your client built a fence, which is problematic since that's highly preserving the status quo. And we have all this litigation over the fence and preliminary injunction, and I'm wondering, you know, what's going on with Judge Goodwood and Vermilion County? Why don't we just get this case resolved, and then we don't have any issues? That's probably where we're trying to head, Your Honor, and I don't disagree. We're not talking about a good deal of property, but here's the problem. The garage that the Keats built, the entire garage is over on my client's property. Well, if we had the surveyor so declaring, then we could figure out what's the remedy in a quiet title, or maybe they could settle it if once we had someone to say this is the property line, but, you know. No, I understand. I think the problem. It looks to me like this is not an abuse of the judicial process because it seems both everyone's involved, but not a good exercise of it. I think we should be able to get this matter resolved one way or the other. A surveyor, Justice Appleton's going to say, is going to make a determination, and the line is here. Now what? Okay. Well, I'm assuming that there was some kind of survey, and I don't know that to be the fact, but I assume that to be the case, and the reason I say that is because this really came to a head when the Keats went to sell their property, and then the bank said. Well, I'm kind of lost here. I thought there was a survey. There was no survey here at all? I'm not sure it was in front of the trial court, but I believe there was a survey at some point because that's what triggered the bank saying. Okay, so there's a survey, which I guess causes a controversy, but the survey hasn't been presented to the trial court. It was not in front of the judge on the injunction. All right. Okay. In any event, you're correct. We're here on this injunction, and there are multiple cases or counts going back and forth, a quiet title by both parties, and counterclaims flying back and forth, and then ultimately the injunction, and you're right. My client did put up a fence. It's not preserving the status quo. Does she lose on her complaint then? No. No, and the reason is because if you look at the standard of review that the Supreme Court has set forth on an injunction and the elements that one must not only set forth, but also prove in front of the trial court, this case fails on all counts because what the Supreme Court has said is on an injunction, on appeal, the issue is whether there was a sufficient showing to affirm the order of the trial court. And also, you have to establish and consider each element. There are four of them. So they have to show irreparable injury. Right. And your claim is they didn't show that and can't show it. My claim is they can't show any of those elements. Counsel, here's the problem I have. Your client is the one, as Justice Steinman has argued, who disrupted the status quo, right? And every case that I have found says unequivocally, absolutely, a preliminary injunction preserves the status quo. So under your argument, because your client, who filed the initial suit, instead of waiting on the court, went out, if you want to call it self-help, built the fence, changed the status quo, and now all of a sudden it's the other side's burden of proof to establish all the elements for the preliminary injunction. That seems to me to be backwards. It seems to me that whichever party disrupts the status quo, changes the status quo, they ought to have the burden. That's not the element. That is not the standard, though. But do you have a case that says that the party who is trying to reestablish the status quo has the burden of going forth with all the factors on the preliminary injunction? No, I don't have a case. I don't think there's going to be a case that says that. I would agree with you. I think what the law says is the party seeking an injunction has the burden of establishing all four elements. And what I'm saying is because the Keiths sought the injunction, they have the burden of establishing all the elements. They sought the injunction because your client changed the status quo. Isn't there something called the good or clean hands doctrine? Well, there is, but that applies to equity. This is a statutory issue because the Injunction Act is pretty clear. Well, it's a chancery case. Well, the case law is pretty specific. I understand what you're saying, but the Supreme Court says if you're seeking the injunction, you have the burden of proof on these four elements. And what I'm saying is even if my client put up the fence and changed the status quo, it doesn't matter because the other side can't meet the burden that the Supreme Court has clearly set forth. What the Supreme Court said was, and the trial court not only has to consider but find, is there's a clearly ascertained right and need of protection. Irreparable harm will occur without the injunction. There's not an adequate remedy at law, and there's a likelihood of success on the merits. And if you look at the order that the trial court issued here, none of those things are contained in the order or even considered. And in fact, when I argued that to the trial court, the response was, I understand your reliance on case law, but I think that this is a neighborhood civility issue, and I want to preserve that, and therefore I'm granting the injunction. And I'm not saying that neighborhood civility isn't a nice thing or a good goal or anything, but the way to do that is not to issue an injunction without discussing all four elements and finding that indeed all four elements have been met here. And I'm saying not only was that not discussed, not only was that not considered, but on this record the trial court can't find that. And here's why. Because really what the Keiths are saying is, I want this injunction because I can't get to my backyard to mow. That's really what they were saying. But the evidence before the trial court was that there was a garage door in the back of the garage that he could have driven a mower through and gone straight through from the front of the garage to the back of the garage. And even he admitted that the fence didn't affect that. But his answer was, when I asked him, well, have you tried to do that? The answer was, no, I have not tried to go back there through the garage. The problem is that he's built this huge garage on my client's property. Counsel, did you say that the entire garage was on your client's property? The entire garage, yes. According to the survey? Yes, the whole garage. But they had sort of a, I don't know if you'd call it an agreement. You probably would not call it an agreement. But at least there was no dispute that there was a post back there and the parties were kind of going by where the fence was. For a period of time, you're right. That's what was happening here. So they must have been way off then. If it doesn't work, well, then we agreed. And then if that doesn't work, she just told me she would give it to me. It sounds like you're suggesting ultimately the likelihood is the Keats are going to have to tear down their garage? That's a possibility. I wouldn't necessarily recommend that or even suggest that. I mean, there are other things, such as buying the other lot. Well, the remedy might be in question, but the matter at issue is where's the property line? And you need the judicial determination. And it will be two years pretty soon. And as far as simple, straightforward cases go, I don't understand what's going on here. Instead of pursuing this preliminary injunction, how about saying, Judge Goodwin, come on. Let's get a ruling in this case and we're done. Well, that would be fine, except Judge Goodwin is not the trial court that's going to be hearing the underlying suit. It's Judge DeArmond that's actually hearing the underlying suit. All the better. Chief Judge of the Circuit, hey, this is an afternoon's work on a slow day. Hey, come on. What's going on here? It's a problem. And what I find are these property line disputes are very emotional. Well, they are, but all the more reason to get them out of the court. As soon as I get out of here, I'm sure I'm going to go back to get a result. Good luck with that. I will say, I completely understand. I'm sure there are cases that are more important, but the property line things are important to the people involved. And if you look at the injunction, it's important. And the reason it is important is because the Supreme Court has said these are extraordinary remedies. And rightfully so, because you're compelling somebody to either do something or not do something. And so here is what you have to do to meet your burden of proof. And this one fails on all levels. And in fact, I would argue, and I think, when I asked Mr. Keith, look, you basically said that the basis for your injunction is you're afraid that you're going to get these tickets from the Village of Westville. Even though the Village of Westville had not been out except when he called them to complain about my client and never were ever going to go out, I don't think. So I asked him, I said, well, aside from that, what's the basis? And his answer was, well, I believe the property is mine. That was his answer. I want this injunction because I'm afraid of the Village of Westville issuing me tickets, even though they've never issued one and probably never will, but I just think it's mine. So I think really what he's saying is I want to enlarge my right to this property or my use of this property through the injunction. Which I think is an improper use of injunction. So after all of this, when it's said and done is, if you look at this, the injunction was improperly issued. It doesn't meet the standards set forth by the Supreme Court. The order doesn't really meet the standards set forth by the Supreme Court because basically it says we're trying to preserve civility and that's what we're doing here now. There is no neighborhood civility element for an injunction. Maybe unfortunately, but there isn't. And so I think when you look at the evidence that was before the trial court, I think truly thought he was doing the right thing. I just don't think, given... What I would do is I'd say, okay, you want a trial? How about tomorrow morning? Well, that would certainly... You know, I don't have to encourage anybody to do anything. Let's go. And if you got it settled before then, fine. Or just maybe not tomorrow morning, next week or whatever. Okay. Well, maybe Judge Goodwin... I think I have a little bit different reading of what the trial court is trying to say when he's talking about civility in the community. I think he's suggesting that there's something wrong with trying to apply a straightforward injunctive relief here because it was your client who changed the status quo. And I think that's what he's getting at, that the way this all came about doesn't really fit squarely within the preliminary injunctive statutory scheme. And I think that's why the court made the ruling that it did. And that may be right. But you have to remember that the Keiths are the ones that were before the trial court asking for an injunction. But they didn't have any choice because your client changed the status quo. Well, but you also have to remember that currently, as this case sits, that property belongs to my client. As it sits right now, that property is titled... I thought that hadn't been... Well, they're competing. There are quiet title suits that are currently pending. But I think even the Keiths would admit that it's currently titled. Well, if you've got quiet title suits pending, why not resolve the issue through those actions? Well, ultimately, that's where we're heading as soon as we get this injunction addressed. Well, looking at it from the Keiths' perspective, and I happen to own some ground, and you probably do too, if somebody put a fence on what I believed was my ground, and if I couldn't get on it for one day, I would consider that an irreparable injury. That's how serious I would take it. And it sounds like right now, since the survey's not in front of the court, we don't know where the line actually is. So when you say they haven't proved any of the four elements of the injunction, I don't really see where, if you're deprived from getting on your own real estate, that is not an irreparable injury, even if it's for a minute or a day, a week, or however long this litigation drags out. Except he isn't deprived from getting on it. He could go through his garage and take his lawnmower through his own garage and go back there. He thinks he owns the strip, doesn't he? That's the property I would be talking about. Well, you're right, he does. Well, I know you're saying he's wrong. I mean, the big issue here, as far as I could tell, was I can't get to the back to mow. And so the answer to that is, well, sure you can. Just go through the garage until we get this little strip resolved. Thank you. Thank you. You will have rebuttal. Mr. Townsley. Justice Turner, I agree with you 100%. And I quoted a case, the Happy Hour Securities LLC versus, what was it, Ag Resources, where it says that when land is involved, there is no adequate remedy. That you have to have some type of settlement. You have to have some type of an equitable determination by the court. That you can't just willy-nilly decide that this is going to be mine and this is going to be yours. There was a boundary agreement established. And I think it's important, and I know you've read the record, that Mrs. Wooler, years before this issue came up, agreed that the post that you talked about, Justice Turner, was the boundary line. And in reliance upon that, and also, if you remember reading the transcript, that there is testimony from Mrs. Wooler's that she asked the Keese to move their garage over because she thought it was too close to her house. Well, she was involved in setting the place where the garage and the driveway was built. So this went on for years. And then on July 6th of last year, she decides to put up the fence. Well, I found out that this probably is not your land, that the post that we talked about where the two fences meet is probably not the boundary line. So your garage and your driveway and your garden in the back of the garage and all that is now on my land. So what did they do? They went to court, and eventually Judge Goodwin gave them an injunction, exactly as you say, to preserve the status quo. Now, there has been a survey, as Ms. Punderburg pointed out, that is not yet before the court. It will be. There's also been an appraisal of this property. That's not yet before the court, but it will be. But we've not been able to get to court because they asked for, the Woolers asked for, the case to be put on hold until this issue could be decided. So what did Judge Goodwin do? Judge Goodwin said, look, folks, this is a dispute, a neighborhood dispute, and we're going to preserve the status quo because we don't like people going out and trying to decide the law on themselves. Well, what we have then is a situation where both parties probably have a right, a clear right, to discuss the boundary line and their interest in this land. So we also have a situation where there's land involved, so there's irreparable harm, as all the courts have said up and down the state. The irreparable harm being in Camp Moe's property? Irreparable harm also means, Judge, that Mrs. Woolers has the option, has the option of cutting off their driveway and their garage because it's on the same strip. What's the irreparable harm now before? He's not able to mow? Not able to mow and not able to access what Mrs. Woolers for years has said is yours. So he's got his nose out of joint. Pardon? He's got his nose out of joint. He doesn't like it. What's with the preliminary injunction? I noticed, by the way, it was August 2014 complaint to quiet title was filed. Eleven months later is this preliminary injunction. I mean, how tricky, how busy is the Vermillion County Circuit Court to be able to get a quiet title case involving some land between two neighbors, residential land? We're not even talking about farmland in the country. Get this all resolved. I don't understand it. Because Judge Yarman decided that that was not the proper way to go and he dismissed it. He dismissed what? He dismissed the counterclaim. He dismissed the case counterclaim that was filed in response to this quiet title case. And this has been going on for, you know, we've been in front of, it wasn't mine, it was one of my associates, was in front of Judge Yarman three or four times trying to get something on record that we could proceed with. And then instead of doing that and working with the court and trying to get this resolved, as I think Judge Goodwin pointed out in his recitation up until the time the order was entered, his recitation on granting the injunction, he said, in effect, that the same thing that you are saying, we should get this resolved, and in order to do that, we're going to preserve the status quo because we're not going to let people go out and just take justice into their own hands. Yeah, but the status quo in front of him was turn down the fence. That is it. He's preserving not the status quo as it existed, the status quo as it was before. Yeah. Isn't that right? That was the whole thing. Yeah. You know, we got a couple of neighbors with their nose out of joint and doing dumb stuff. Yeah. So let's preserve the status quo. Let's get this in front of the court, as Judge Goodwin suggested, and let's get it over with. And in the meantime, you stay on your side as it has been for years. You stay on your side as it has been for years. And tear down the fence. Take the fence down so these people can get over here and what they think is theirs, and it won't be blocked by this fence. And if the court decides that these people don't own this, they don't have any right to it, you can put the fence back up. We'll tear the garage down. In the meantime, let's keep it as it was and as it has been for years. Thank you. Thank you. Rebecca, please. That raises an interesting point, which is at what point do we talk about the status quo? Because the status quo, when we came into court in front of Judge Goodwin, was the fence was up. And if you want to be technical about preserving the status quo. What was the status quo before the lawsuit was filed? Well, there wouldn't have been a fence up. That's for sure. That would be the status quo, then, wouldn't it? Well, I think not. I think the status quo. Preliminary injunction. It's a preliminary injunction status quo. You have to preserve the status quo as of the date that the preliminary injunction got filed, and that was the fence. Really? Do you have a case that says that? Well, I don't. I would be shocked if you did, since the case would say just the opposite. I do think that that's the standard and the rule. Again, the interesting thing is, one of the reasons why he is having so much difficulty with this property is because he built a yard barn on the west side. He filled the center part in with landscaping rocks, and now he's kind of stuck trying to go through this other area, which is this strip that we're talking about. There's no evidence that my client interfered with his ability to get back there and mow. There's no evidence that she even intended to do that. And in fact, she was quizzed pretty hard by the trial court on that point. She said, no, I don't tend to do that. So, again, I think because the injunction is so extraordinary, and because the Supreme Court takes such a tough view on these things, that this one fails for all of the reasons that I've said, and we would ask that you dissolve this injunction. Thank you. Okay, thanks to both of you. The case is submitted. Court stays in recess until further call.